FILED

2015 APR -9 PM 1: 10

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

C R 15 - 0 1 8 3

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 15- |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1960: Operation of Unlicensed Money Transmitting Business; 31 U.S.C. §§ 5314, 5322(b), 31 C.F.R. §§ 103.24, 103.27(c), (d): Failure to Disclose Foreign Bank Accounts; 26 U.S.C. § 7206(1): Subscription to a False Tax Return; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done] |
| ALI AMIN, | |
| Defendant. | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. §§ 1960, 2]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

1.   Primex International Trading Company, Inc. ("Pitco") was a California corporation located in Los Angeles, California, within the Central District of California.  Pitco was in the

business of distributing dried fruit and nut products to domestic and international markets. Defendant ALI AMIN ("defendant AMIN") wholly owned and operated Pitco.

2. Amin Padidar Limited ("Amin Padidar") was based in Tehran, Iran, and in the business of processing and distributing pistachios grown by producers in the region, including pistachio farms in Iran owned by defendant AMIN and his immediate and extended family.

a. In or about 1998, defendant AMIN became the one-third owner of Amin Padidar. Since in or about 2007 to the present, defendant AMIN has owned 50 percent of Amin Padidar.

b. Amin Padidar maintained "grower accounts" for producers of pistachios for whom Amin Padidar processed and sold pistachios, including such accounts for members of defendant AMIN's immediate and extended family. The grower accounts were used to record and track the costs of processing pistachios and the payment of profits or remainders from the ultimate sale of pistachios for growers serviced by Amin Padidar. Amin Padidar paid interest on positive balances in the grower accounts, and charged interest where such grower accounts became overdrawn.

3. Imavel Corporation ("Imavel") was registered in Panama and domiciled in Switzerland. Imavel was created by the Amin Padidar partners as an affiliate of Amin Padidar and, in part, as a vehicle through which to handle financial transactions for Amin Padidar's international (not Iranian)

customers.  As a result, defendant AMIN owned an interest in one-third of Imavel.  Imavel maintained bank accounts at Hyposwiss Private Bank in Zurich, Switzerland.

B.   THE MONEY TRANSMITTAL BUSINESS

4.   At certain times, Pitco purchased wholesale pistachios from Amin Padidar for certain domestic and foreign customers who desired Iranian pistachios.  Pitco could not, however, send United States dollars directly to accounts of Amin Padidar at financial institutions in Iran to pay for the product.  Therefore, Pitco maintained a running account payable to Amin Padidar for all purchases of product from Iran.  Amin Padidar maintained a corresponding running account receivable to track what was owed to Amin Padidar by Pitco for product.

5.   In order for Pitco to pay Amin Padidar for product, Amin Padidar would "buy dollars" from individuals in Iran who wished to transfer funds to relatives, friends, or themselves, in the United States.  Upon receipt of Iranian rials from individuals in Iran, Amin Padidar would issue a "credit note" to Pitco via email with instructions for Pitco to send an equivalent amount of United States dollars to the individual in the United States designated as the beneficiary by the person who deposited the rials with Amin Padidar in Iran.  This deposit of rials with Amin Padidar, and corresponding transfer by Pitco in the United States, would reduce the amount owed by Pitco to Amin Padidar.

6.   At times, the "buying dollars" transfers between Amin Padidar and Pitco described above utilized the Imavel account at Hyposwiss, rather than the Pitco account in the United States, in order to effect wire transfers of dollars to individuals in the United States.

7.   As the owner of Pitco, defendant AMIN had to, and did, approve of any "buying dollar" transactions related to the Pitco account payable to Amin Padidar.  Defendant AMIN engaged in this money transmittal activity knowing that it was unlawful. Neither defendant AMIN nor Pitco had a license from the state of California or any other state or the United States to operate a money transmittal business.

8.   For example, defendant AMIN approved the transfer of approximately $600,000 from Iran to the United States as follows:

a.   On or about October 27, 2008, defendant AMIN received an email from Fatemeh Amin, a relative of defendant Amin, in which Fatemeh Amin requested the transfer of $600,000 from Amin Padidar to Fatemeh Amin's brother in the United States, and explained how Fatemeh Amin would arrange to deposit rials equal to $600,000 with Amin Padidar for the transfer. Defendant AMIN sent an email in response to Fatemeh Amin and explained that "[w]e can transfer the $600K tomorrow Europe time.  You should have the funds in your account by tomorrow Thursday Los Angeles time."

b.   On or about October 29, 2008, the brother of Fatemeh Amin sent an email to Fatemeh Amin with a copy to defendant AMIN that included wire transfer instructions for the transfer of the $600,000 to his bank account in Los Angeles, California.

c.   On or about October 31, 2008, defendant AMIN caused the transfer of $600,000 from the Imavel account at Hyposwiss Private Bank in Switzerland, to the account of the brother of Fatemeh Amin at City National Bank in Los Angeles, California.

9.   From on or about November 6, 2008, through on or about December 19, 2008, defendant AMIN caused and approved 7 wire transfers in the amount of $95,000 each, for a total of $665,000, from the Imavel account at Hyposwiss Private Bank in Switzerland, to the account of his brother at Wells Fargo Bank in Los Angeles, California, in relation to Amin Padidar credit memoranda numbers 856, 867, 870, 877, 890, 894, and 901 issued to Pitco.

10.   From in or about 2007 through in or about 2011, defendant AMIN approved and caused the transfer of approximately $17.15 million from Iran to individuals in the United States through the money transmittal operation described above.

11.   Beginning in or about 2007 and continuing through in or about 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMIN, together

with others known and unknown to the United States Attorney, aiding and abetting each other, knowingly conducted, controlled, managed, supervised, directed, and owned all or part of an unlicensed money transmitting business, which affected interstate and foreign commerce and which was: (a) operated in California, where such unlicensed operation was punishable as a misdemeanor or felony under California law; and (b) failed to comply with the money transmitting business registration requirements under Title 18, United States Code, Section 5330, and the regulations proscribed under that section.

COUNT TWO

[31 U.S.C. §§ 5314, 5322(b); 31 C.F.R. §§ 103.24,
103.27(c), (d); 18 U.S.C. § 2]

12.   The United States Attorney hereby realleges and incorporates by reference paragraphs 1 through 11 of this Information as though fully set forth herein.

13.   On or about June 30, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant ALI AMIN knowingly and willfully failed to file with the Commissioner of the Internal Revenue Service a Form TD F 90-22.1 Report of Foreign Bank and Financial Accounts disclosing that defendant ALI AMIN had a financial interest in, and signature and other authority over, account number xxxxxxx.254, in the name of Imavel Corporation, at Hyposwiss Private Bank in Zurich, Switzerland, which account had an aggregate value exceeding $10,000 during the calendar year 2009, that is, approximately $2.9 million in September 2009, and defendant ALI AMIN did so (a) while violating other laws of the United States, namely, operation of an unlicensed money transmittal business, in violation of 18 U.S.C. § 1960; and (b) as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

COUNT THREE

[26 U.S.C. § 7206(1); 18 U.S.C. § 2]

14.   The United States Attorney hereby realleges and incorporates by reference paragraphs 1 through 11, and 13 of this Information as though fully set forth herein.

15.   On or about June 25, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant ALI AMIN, a resident of Los Angeles, California, willfully made and subscribed, by a written declaration verifying that he was doing so under penalty of perjury, and filed with the Internal Revenue Service, a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2009, which defendant ALI AMIN did not believe to be true and correct as to every material matter, in that the tax return reported total income of -$1,127,331 on line 22, whereas, as defendant ALI AMIN then knew and believed, his total income for the year 2009 was in excess of -$1,127,331, specifically, defendant ALI AMIN concealed unreported income of approximately $1,926,742.47.


STEPHANIE YONEKURA
Acting United States Attorney


ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section